**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4853**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

BRIAN PORTIS,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Richard L. Williams, Senior District Judge.  (3:08-cr-00034-RLW-1)

Argued: December 10, 2010      Decided: January 13, 2011

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charles David Whaley, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jennifer M. Newman, Richmond, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises from a district court's denial of defendant Brian Portis's motion to suppress evidence recovered from his home. Although Portis consented to the warrantless search of his residence, he argues that his consent was tainted by officers' earlier sweep of the premises, which he claims violated his Fourth Amendment rights. For the reasons described below, we disagree and affirm.

I.

A.

We briefly summarize the relevant facts. On June 6, 2007, Officer Edward Aeschlimann and his partner, Officer Corey Watson, pulled Portis over for running a stop sign near his Richmond, Virginia home. Portis was driving a brown pick-up truck with a ladder rig. When running his information, the officers learned that Portis's license had been suspended. Portis consented to a search of his vehicle, in which the officers found a loaded magazine. Portis explained that although he had no guns in his car or home, his mother had firearms that he sometimes used. He also mentioned that he was a former Army infantryman and an "expert marksman." J.A. 41. The traffic stop ended without incident.

2

One week later, on the evening of June 13, 2007, Officers Aeschlimann and Watson received a dispatch alerting them to a shooting in their area "involving an individual in a brown pick-up truck that had a ladder rig." Id. at 44. Officer Aeschlimann contacted Detective Bill Brairton, who had phoned in the dispatch, and learned that Detective Brairton was investigating a homicide, for which Portis was a person of interest.

Detective Brairton reported that during his investigation he had spoken with a woman named Diana Rameriz, who claimed that Portis owned several guns--including at one point an assault rifle--and had threatened her son with a firearm. Detective Brairton explained that Rameriz had contacted him again, earlier on June 13, to report that Portis had just shot at her son. Detective Brairton further stated that Rameriz's son had not been hit and would seek out Officers Aeschlimann and Watson when they arrived on the scene. Detective Brairton also informed Officer Aeschlimann that Portis had a picture of himself with an assault rifle taped to his front door and could be "heavily armed." Id. at 46.

Equipped with this information, Officers Aeschlimann and Watson called for backup and arrived at Portis's house at 6:52 p.m., along with another two-person police vehicle. The officers found Portis standing in the doorway of his home and

3

another, unidentified man standing near the front steps. Officer Aeschlimann shouted "Hey Brian." Id. at 50. Portis responded by retreating into his home. At that point, Officer Aeschlimann drew his weapon and commanded Portis to exit his home. About fifteen seconds later, Portis complied, raising his hands to show he was not armed "and walk[ing] down the front steps as instructed." Id. at 51.

The officers approached Portis and the other man, placed them both in handcuffs, and patted Portis down to make sure he was not armed. Officer Aeschlimann then instructed another officer, Officer Gregory Hamilton, to "conduct a sweep of the house to make sure no one else was inside." Id. Officer Hamilton swept the house for two minutes, accompanied by an officer-in-training. The two did a "visual scan" of the surroundings and did not open any closets or go through any drawers. Id. at 94. Officer Hamilton reported that he had not seen any weapons but had observed a metal spoon, with what he thought was cocaine residue, sitting on the floor of a bedroom.

Officer Watson read Portis his Miranda rights at 7:00 p.m. Portis then admitted to Officer Watson that he had a firearm in his home. During Officer Watson's conversation with Portis, Rameriz's son--the alleged shooting victim--arrived at the scene, as did Portis's roommate. After speaking with the

4

alleged victim, the officers concluded that they did not have probable cause to arrest Portis.

The officers released Portis and the other individual from handcuffs but informed them that they could not leave, as the officers were still investigating the cocaine residue and gun in Portis's home. Officer Aeschlimann asked Portis and his roommate if the officers could search the home, noting that he thought that "the fact there was drug paraphernalia in plain view," and that Portis had admitted he had a firearm would, in any event, be sufficient to obtain a search warrant. Id. at 60. Portis and his roommate consented to the search. Portis also described to the officers where the gun was located and admitted that he had drug paraphernalia in his bedroom, which he used to smoke marijuana two or three times a week. Officers recovered the gun and drug paraphernalia.

B.

On January 24, 2008, Portis was charged with possession of a firearm as an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g)(3), and unlawful drug possession, in violation of 21 U.S.C. § 844. Portis moved to suppress the evidence recovered from his home, arguing that his consent to the search was tainted by the officers' allegedly unlawful initial entry. Officers Aeschlimann, Hamilton, and Watson testified at an April 2008 suppression hearing.

After hearing from both sides, the district court denied the motion to suppress. Portis was found guilty on both counts in September 2009.* This appeal followed.

II.

On appeal, Portis again challenges the officers' initial sweep of his home, urging that the search violated his Fourth Amendment rights. We disagree. In light of the facts presented at the suppression hearing, the brief visual scan of Portis's residence was justified as an appropriately limited protective sweep.

When reviewing an appeal from a district court's denial of a motion to suppress, "we review the court's factual findings for clear error and its legal determinations de novo." United States v. Wardrick, 350 F.3d 446, 451 (4th Cir. 2003). A protective sweep of a defendant's home is justified if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the . . . scene."

---

* We vacated Portis's initial conviction, citing confusion surrounding what he believed to be a conditional guilty plea. See United States v. Portis, 332 F. App'x 870, 872 (4th Cir. 2009). We did not reach the merits of his present claim, and he has since been found guilty after a bench trial.

6

Maryland v. Buie, 494 U.S. 325, 334 (1990); see also United States v. Baker, 577 F.2d 1147, 1152 (4th Cir. 1978) (finding that a protective sweep of a defendant's home was justified when the defendant was arrested in front of it).

The vast majority of circuit courts to have considered the issue have upheld protective sweeps conducted in non-arrest situations in which officers are lawfully on a defendant's property. See, e.g., United States v. Miller, 430 F.3d 93, 98 (2d Cir. 2005) (finding "that a law enforcement officer present in a home under lawful process . . . may conduct a protective sweep when the officer possesses" articulable facts as outlined in Buie); United States v. Gould, 364 F.3d 578, 584 (5th Cir. 2004) (en banc) ("[A]rrest is not always, or per se, an indispensable element of an in-home protective sweep."); see also State v. Davila, 999 A.2d 1116, 1127-29 (N.J. 2010) (collecting cases). Although we have not yet spoken directly to this point, on the undisputed facts, we are persuaded that the officers' brief walk-through of Portis's home was justified.

As detailed at the suppression hearing, the officers had reason to believe that Portis had firearms in his house and had just shot at someone. They were also aware that Portis was both a person of interest in a homicide investigation and an army-trained "expert marksman." The officers had seen at least one other individual on the premises and did not know what Portis

7

had done during the period in which he retreated inside his home and disappeared from view. They had reason to fear that Portis may have been conferring with an armed confederate or hiding a gun to which he would have had easy access to shoot at the departing officers, in the event that they did not arrest him.

These specific facts were sufficient to justify a reasonable officer's concern that Portis's home "harbor[ed] other persons who [we]re dangerous and who could unexpectedly [have] launch[ed] an attack." United States v. Green, 599 F.3d 360, 376 (4th Cir. 2010) (quoting Buie, 494 U.S. at 333); see also Mora v. City of Gaithersburg, 519 F.3d 216, 226 (4th Cir. 2008) (upholding a protective sweep when officers "did not and could not fully know the dimensions of the threat they faced"). Portis's assertion to the contrary lacks merit.

Significantly, the officers did not conduct an intrusive investigation during their initial entry or linger in Portis's home longer than necessary. They instead confined themselves to a two-minute sweep of places in which a dangerous individual might have been hiding. On these facts, their limited search was justified and did not taint Portis's subsequent consent.

III.

We have reviewed Portis's remaining arguments and find them to be without merit. For the foregoing reasons we affirm the

8

district court's denial of Portis's motion to suppress the disputed evidence.

AFFIRMED