PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RODNEY JENKINS, a/k/a Hot Rod,
a/k/a JR, a/k/a Clifton Howard,
a/k/a RJ, a/k/a Robney Jenkins,

*Defendant-Appellant.*

No. 09-4400

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(1:07-cr-00091-BEL-1)

Argued: October 29, 2010

Decided: January 31, 2011

Before WILKINSON, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

## COUNSEL

**ARGUED:** Joseph Murtha, MILLER, MURTHA & PSORAS, LLC, Lutherville, Maryland, for Appellant. Christopher John Romano, OFFICE OF THE UNITED STATES

ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Appellant Rodney Jenkins pleaded guilty in the District of Maryland to distribution of crack cocaine, in contravention of 21 U.S.C. § 841(a), and being a felon in possession of a firearm, in contravention of 18 U.S.C. § 922(g)(1). The district court enhanced Jenkins's sentence by finding him to be a "career offender" under section 4B1.1 of the Sentencing Guidelines (the "Career Offender Enhancement"), imposing a 188-month term of imprisonment.[1] Jenkins's sole contention on appeal is that one of his two prior felony offenses of conviction — the common law offense of resisting arrest in Maryland — is not a "crime of violence" for purposes of the Career Offender Enhancement. As explained below, we affirm.

---

[1]The Career Offender Enhancement defines a "career offender," and provides that a defendant is such an offender if

> (1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a) (2008). For purposes of the Career Offender Enhancement, a "prior felony conviction" includes "a prior . . . state conviction for an offense punishable by . . . imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony." *Id.* § 4B1.2 cmt. n.1.

## I.

On January 30, 2009, Jenkins was convicted in the district court for distribution of crack cocaine and being a felon in possession of a firearm. On April 2, 2009, the probation officer filed the presentence report (the "PSR") with the court, recommending that Jenkins be deemed a career offender under the Career Offender Enhancement of the Guidelines. One of the two felony convictions underlying the PSR's career offender recommendation was Jenkins's 1998 conviction of the Maryland common law offense of resisting arrest (the "Resisting Arrest Offense").[2] According to the PSR, the applicable advisory Guidelines range was 188 to 235 months of imprisonment.

On April 20, 2009, Jenkins submitted a sentencing memorandum to the district court and objected to the Resisting Arrest Offense being used to designate him as a career offender. On April 22, 2009, the court conducted a sentencing hearing in which it rejected Jenkins's contention, relying on our unpublished decision in *United States v. Mullen*, 311 F. App'x 621, 623-24 (4th Cir. 2009) (concluding that Resisting Arrest Offense was "crime of violence" for purposes of

---

[2]In *Purnell v. State*, the Court of Appeals of Maryland specified the elements of the Resisting Arrest Offense as follows: "(1) the defendant was arrested; (2) the arrest was lawful; and (3) the defendant resisted or refused to submit to that arrest." 827 A.2d 68, 78 (Md. 2003) (citing *Barnhard v. State*, 602 A.2d 701, 705 (Md. 1992)). At the time of Jenkins's 1998 conviction, the Resisting Arrest Offense was a common law crime punishable by imprisonment for a term exceeding one year; therefore, Jenkins's conviction constitutes a prior felony conviction for purposes of the Career Offender Enhancement. *See State v. Huebner*, 505 A.2d 1331, 1335 (Md. 1986) (citing *Preston v. Warden of Md. House of Corr.*, 169 A.2d 407, 408 (Md. 1961)). In 2004, resisting arrest was codified in Maryland as a statutory misdemeanor offense punishable by up to three years of imprisonment. *See* Md. Code Ann., Crim. Law § 9-408. Although not directly pertinent here, a conviction for the Maryland statutory offense appears to qualify as a prior felony conviction under the Career Offender Enhancement.

Career Offender Enhancement). In so ruling, the court explained: "Unless I missed something about [*Mullen*], it establishes at least within the boundaries of the Fourth Circuit that the crime of resisting arrest is a crime of violence for guideline purposes." J.A. 44.[3] The court then adopted the PSR and sentenced Jenkins to 188 months in prison.[4]

Jenkins has filed a timely notice of appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

Jenkins's sole appellate contention is that the Resisting Arrest Offense is not a "crime of violence" for purposes of the Career Offender Enhancement of the Guidelines. This contention presents a legal issue that we review de novo. *See United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006).

## A.

Our resolution of this appeal turns on whether our decision in *United States v. Wardrick*, 350 F.3d 446 (4th Cir. 2003), has been undercut by the Supreme Court's subsequent decisions in *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 129 S. Ct. 687 (2009). Before assessing Jenkins's contention that the Resisting Arrest Offense is not a crime of violence, we briefly review the principles and requirements of the Guidelines with respect to crimes of violence and career offender status.

---

[3]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[4]If the Resisting Arrest Offense had not been deemed a "crime of violence" for purposes of the Career Offender Enhancement, Jenkins would have received a base offense level of 27, instead of the level of 31 that was applied. A base offense level of 27 and Jenkins's criminal history category of VI would have resulted in an advisory Guidelines range of 130 to 162 months, rather than the range of 188 to 235 months that was utilized.

1.

For purposes of the Career Offender Enhancement, the Guidelines define a "crime of violence," in pertinent part, as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> . . . .
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a)(2) (2008). Because "resisting arrest" is not one of the offenses specifically enumerated in section 4B1.2(a)(2) of the Guidelines, the Resisting Arrest Offense can be a "crime of violence" only if it falls within the "otherwise involves" clause of that subsection.[5] In our *Wardrick* decision in 2003, we explained that the Resisting Arrest Offense "poses a threat of direct confrontation between a police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others." 350 F.3d at 455. In this appeal, Jenkins acknowledges the unambiguous nature of the *Wardrick* decision, but contends that it has been undercut by the Supreme Court's subsequent decisions in *Begay* and *Chambers*.

Each of those three decisions — *Wardrick*, *Begay*, and *Chambers* — assessed whether a particular offense qualified as a "violent felony" under the Armed Career Criminal Act (the "ACCA"), and none of them directly addressed the definition of a "crime of violence" for purposes of the Career

---

[5]The "otherwise involves" clause of section 4B1.2(a)(2) has been referred to as the "residual" clause or the "otherwise" clause.

Offender Enhancement of the Guidelines.[6] Nonetheless, we are guided by the "nearly identical" and "materially indistinguishable" language in the respective provisions. *United States v. Rivers*, 595 F.3d 558, 560 n.1 (4th Cir. 2010). Indeed, we recently recognized that "precedents evaluating the ACCA apply with equal force to [Guidelines section] 4B1.2." *Jarmon*, 596 F.3d at 231 n.*. And, in assessing the "substantially similar" language that defines a violent felony under the ACCA and a crime of violence under the Guidelines, our good friend Judge Niemeyer has specified that "*Begay*'s analysis is applicable to [section] 4B1.2(a)(2)." *See United States v. Seay*, 553 F.3d 732, 739 (4th Cir. 2009).

2.

In *Begay*, the Supreme Court ruled in 2008 that New Mexico's offense of driving under the influence of alcohol ("DUI") was not a violent felony under the ACCA. *See* 553 U.S. at 141-42. The Court explained that the "otherwise involves" provision of the ACCA encompasses only those offenses "that are roughly similar, in kind as well as in degree of risk posed," to those offenses enumerated therein. *Id.* at 143. The Court elaborated that — in addition to a comparable degree of risk — the conduct underlying the offense in question must also be comparable to the conduct required by the ACCA enumerated offenses, all of which "typically involve purposeful, violent, and aggressive conduct." *Id.* at 144-45 (internal quotation marks omitted). "[B]y way of contrast," offenses that

---

[6]Under the ACCA, the term "violent felony" is defined, in pertinent part, as

> any crime punishable by imprisonment for a term exceeding one year . . . that . . . (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(ii). The "otherwise involves" portion of the ACCA definition of a violent felony, like its counterpart in the Guidelines, is sometimes referred to as the "residual" or "otherwise" clause.

"typically do not insist on purposeful, violent, and aggressive conduct" are not roughly similar in kind to the ACCA enumerated offenses. *Id.* at 145. And, more specifically, the Court pointed out that "crimes involving *intentional* or *purposeful* conduct are different than a DUI." *Id.* at 146 (emphasis added). As a result, the *Begay* Court concluded that New Mexico's DUI offense was "simply too unlike the [enumerated] examples" to constitute a violent felony. *Id.* at 142.

In *Chambers*, the Supreme Court further refined its analysis of the ACCA "otherwise involves" provision, assessing whether the Illinois offense of knowingly failing to report to a penal institution was a violent felony under the ACCA. *See* 129 S. Ct. at 690-91. The Court's 2009 ruling that the Illinois failure to report offense is not a violent felony was predicated on three factors. First, the Court explained that the offense of failing to report "would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody," an offense contained in the same statutory subsection of the Illinois statute. *Id.* at 691. Second, the Court observed that the Illinois offense of failing to report does not involve "a serious potential risk of physical injury" to another person because a failure to report is more of an offense of "inaction." *Id.* at 692. As the Court further explained, it is unlikely that a person who unlawfully fails to report would also call attention to himself by engaging in violent or unlawful conduct. *Id.* Third, in rejecting the prosecutor's contention that a failure to report demonstrates an especially strong aversion to being in custody, the Court recognized that the proper "question is whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a serious potential risk of physical injury." *Id.* (internal quotation marks omitted). The proper answer to that question, according to the Court, was no. These observations reemphasized *Begay*'s earlier recognition that a court making a "violent felony" assessment (or, as here, a "crime of violence" assessment) should focus on whether the specific offense indicates that the

offender is more likely to engage in such violence intentionally or purposefully.

Pursuant to these decisions, we must decide whether the Resisting Arrest Offense — the Maryland common law offense of resisting arrest — "involve[s] purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 144-45. In making this assessment, we utilize the familiar "categorical approach," looking only to the elements of the offense. *Seay*, 553 F.3d at 737. Thus, "we consider the [Resisting Arrest Offense] generically, that is to say, we examine it in terms of how the law defines [it] and not in terms of how an individual offender might have committed it on a particular occasion." *Begay*, 553 U.S. at 141.

3.

In our *Wardrick* decision, rendered prior to *Begay* and *Chambers*, we concluded that the Resisting Arrest Offense constitutes a "violent felony" under the ACCA. *See* 350 F.3d at 455. Wardrick had been convicted of two firearms offenses and was thereafter sentenced to 300 months in prison. On appeal, he contended that the district court had erroneously deemed him to be an armed career criminal under the ACCA. *Id.* at 448. One of the prior convictions that Wardrick challenged was for the Resisting Arrest Offense. *Id.* at 451. We concluded that "the district court accurately characterized Wardrick's 1988 conviction for resisting arrest as a violent felony," emphasizing that "[t]he act of resisting arrest poses a threat of direct confrontation between a police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others." *Id.* at 455.

In ruling against Jenkins at the sentencing hearing in this case, the district court relied primarily on our unpublished decision in *Mullen*, rendered after *Begay* and *Chambers*, for the proposition that *Wardrick* yet controls the question of whether the Resisting Arrest Offense is a "crime of violence"

for purposes of the Career Offender Enhancement. *See United States v. Mullen*, 311 F. App'x 621, 623-24 (4th Cir. 2009). The *Mullen* defendant, who had been convicted of bank robbery and sentenced as a career offender, contended on appeal that his prior 2001 conviction for resisting arrest in Maryland was not a "crime of violence." *Id.* Mullen acknowledged that we had ruled to the contrary in *Wardrick*, but contended that *Wardrick* was no longer good law in light of *Begay*. *Id.* Our *Mullen* panel disagreed with that contention, however, explaining that "[o]ur review leads us to conclude that the offense of driving while intoxicated, considered by the court in *Begay*, is sufficiently different from the offense of resisting arrest that *Begay* does not overrule *Wardrick*." *Id.* at 624. In this appeal, Jenkins maintains that *Mullen* was erroneously decided, that *Wardrick* is no longer good law, and that the district court erred in ruling against him on his status as a career offender.

B.

In our *Wardrick* decision, we did not equivocate: "The act of resisting arrest poses a threat of direct confrontation between a police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others." 350 F.3d at 455. Our reasoning in *Wardrick* recognized that — unlike the offenders in *Begay* (New Mexico DUI) and *Chambers* (Illinois failure to report) — an offender convicted of resisting arrest "is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a serious potential risk of physical injury." *Chambers*, 129 S. Ct. at 692 (internal quotation marks omitted). Thus, under *Begay* and *Chambers*, the Resisting Arrest Offense is not a "crime of violence" for purposes of the Career Offender Enhancement only if it can be committed either negligently or recklessly — as opposed to intentionally or purposefully.

The third element of the Resisting Arrest Offense — which requires that "the defendant resist[ ] or refuse[ ] to submit to

[a lawful] arrest," *Purnell v. State*, 827 A.2d 68, 78 (Md. 2003) — confirms our conclusion that a person must either intentionally or purposefully commit the Resisting Arrest Offense. In *Purnell*, the Court of Appeals of Maryland characterized the third element of the Resisting Arrest Offense as involving the "'*intent* to resist . . . lawful apprehension.'" 827 A.2d at 74 (emphasis added) (quoting *Busch v. State*, 426 A.2d 954, 956 (Md. 1981)); *see also Cooper v. State*, 737 A.2d 613, 617 (Md. Ct. Spec. App. 1999) (recognizing that Resisting Arrest Offense "requires proof that [defendant] *intentionally*" resisted (emphasis added)). Therefore, because the Resisting Arrest Offense cannot be committed negligently or recklessly, but must be committed intentionally, it qualifies as a "crime of violence" for purposes of the Career Offender Enhancement. In these circumstances, Jenkins's claim of sentencing error must be rejected.

### III.

Pursuant to the foregoing, the judgment of the district court is affirmed.

*AFFIRMED*