Vacated and remanded by published opinion. Judge FLOYD wrote the majority opinion, in which Judge MOTZ joined. .Judge NIEMEYER wrote a dissenting opinion.
OPINION
FLOYD, Circuit Judge:
Mima Del Carmen Gomez, a citizen of El Salvador, pleaded guilty to a charge of unlawful reentry of a deported alien after an aggravated felony conviction, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). Although she agreed with the statement of facts submitted by the government in support of her guilty plea, Gomez objected to the government’s assertion that her, prior conviction for child abuse under Maryland law amounted to a crime of violence for purposes of the U.S.S.G. § 2L1.2(b)(l)(A)(ii) sentencing enhancement. According to Gomez, because the relevant portion of the statute did not contain a division between forceful and non-forceful conduct, the district court could not use the modified categorical approach to determine that her prior child abuse conviction was a crime of violence.
Despite this objection, in calculating the relevant Sentencing Guidelines range, the district court employed the modified categorical approach to determine that Gomez’s child abuse conviction constituted a crime of violence. For this reason, the district court added sixteen levels to Gomez’s base offense level. Thereafter, the *196 district court calculated her Guidelines range to be forty-one to fifty-one months, but made a downward variance and sentenced her to twenty-four months’ imprisonment. This appeal followed. Because we find that the district court’s application of the modified categorical approach to the indivisible provision at issue was in error, we vacate Gomez’s sentence and remand for resentencing.
I.
On August 20, 1999, Gomez pleaded guilty in Maryland state court to one count of child abuse, in violation of Maryland Code 1957, Article 27, § 35C. At the state plea hearing, she admitted that, to punish her son, she had burned the bottoms of his feet with a candle. The state court sentenced her to eighteen months’ imprisonment.
In January 2001, Gomez was deported from the United States. Sometime around December 2010, however, she reentered the United States without having sought or obtained permission to reenter. Gomez was arrested on December 16, 2010. Approximately five months later, she pleaded guilty to a charge of unlawful reentry of a deported alien after an aggravated felony conviction, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). She noted at the time, however, that her prior conviction for child abuse under Maryland law was not a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(l)(A)(ii), which allowed for a sixteen-level increase in her offense level if she has been convicted of a “crime of violence.”
In written memoranda and at the sentencing hearing held on February 1, 2012, the parties set forth their arguments on this issue. The government maintained that “the Maryland child abuse statute under which [Gomez] was convicted has as an element the use, attempted use, or threatened use of physical force against the person of another.” It further contended that the child abuse statute under which Gomez was convicted “actually requires physical injury rather than just the use of force that is capable of causing physical injury and therefore categorically satisfies the Supreme Court’s definition of physical force.” Alternatively, the government suggested that the district court should employ the modified categorical approach. And under this approach, the government noted, “a review of the charging document and transcript of the plea colloquy makes clear that [Gomez’s] conviction for child abuse was a conviction for a crime of violence pursuant to [§ 2L1.2].” As the government pointed out, “[t]he statement of facts offered during the plea colloquy states that upon her arrest [Gomez] admitted that [she] took a candle and burned the bottoms of her minor son’s feet as punishment.”
In contrast, Gomez argued that her child abuse conviction was not a crime of violence. “And ... if it’s not a crime of violence, it’s not an aggravated felony under the facts of this case.” Moreover, according to Gomez, the district court could look no further than the elements of the Maryland child abuse statute in deciding whether her prior conviction could be found to be a crime of violence. Consequently, Gomez avowed, because the statute at issue “does not have an element of ‘violent force’ ... [it] does not constitute a ‘crime of violence’ under [§ 2L1.2].”
At the hearing’s conclusion, the district court determined it appropriate to employ the modified categorical approach to decide whether Gomez’s prior child abuse conviction was a crime of violence. It observed that the Maryland child abuse statute “is broad enough to encompass crimes of violence under some circumstances. And that, therefore, we can look at the *197 permitted universe of documents to determine what kind of child abuse conviction this was.”
The district court then noted that the statement of facts to which Gomez admitted at the state plea hearing indicated that hers was a forceful child abuse conviction. Therefore, the district court concluded that “it was a crime of violence and is appropriately assigned [an] enhancement of 16 levels.” The resultant Guidelines range for Gomez was forty-one to fifty-one months’ imprisonment.
The district court proceeded to determine Gomez’s sentence. It observed that “[t]he [Guidelines are advisory and the Court needs to look at all the facts and circumstances of a particular case.” It then sentenced Gomez to twenty-four months’ imprisonment, stating that the sentence “is sufficient to punish Ms. Gomez and to teach her enough of a lesson that she will think more than once before being tempted to return to the United States.” Gomez subsequently filed this timely appeal.
II.
Gomez argues that the district court erred in employing the modified categorical approach to determine that her prior conviction for child abuse under Maryland law constituted a crime of violence. In so doing, according to Gomez, the district court improperly examined the particular acts that she committed to decide if those acts amounted to a crime of violence. The government asserts, however, that “the district court properly used the modified categorical approach to determine which portion of the child abuse statute was violated in [her] prior case.”
Whether the district court erred in characterizing a defendant’s crime as a “crime of violence” for sentence enhancement purposes is a question of law, which we review de novo. United States v. Diaz-Ibarra, 522 F.3d 343, 347 (4th Cir. 2008). “We rely on precedents evaluating whether an offense constitutes a ‘crime of violence’ under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a ‘violent felony[1] under the ACCA, because the two terms have been defined in a manner that is ‘substantively identical.’” United States v. King, 673 F.3d 274, 279 n. 3 (4th Cir. 2012) (quoting United States v. Jarmon, 596 F.3d 228, 231 n* (4th Cir.2010)).
A.
As stated earlier, U.S.S.G. § 2L1.2(b)(l)(A)(ii) provides for a sixteen-level increase in the offense level if the defendant has been convicted of a “crime of violence.”
“Crime of violence” means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.
Id. § 2L1.2 cmt. n. l(B)(iii).
“In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.” Begay v. United States, 553 U.S. 137, 141, 128 S.Ct. 1581, *198 170 L.Ed.2d 490 (2008). When making this determination, “courts generally employ a categorical approach, under which consideration is given only to the essential elements of the offense and the fact of conviction.” United States v. Baxter, 642 F.3d 475, 476 (4th Cir.2011).
We have found it appropriate to vary this approach only “where different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes.” United States v. Rivers, 595 F.3d 558, 562-63 (4th Cir.2010). “Thus, only when a statute prohibits different types of behavior such that it can be construed to enumerate separate crimes can a court modify the categorical approach to determine ACCA eligibility.” Id. at 563.
Under the modified categorical approach, we “ ‘look only to the fact of conviction and the statutory definition of the prior offense,’ ” and we generally do not consider the “particular facts disclosed by the record of conviction.” Shepard v. United States, 544 U.S. 13, 17, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (quoting Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)). In making this determination, the district court may examine a limited universe of documents relevant to the underlying conviction. Id. at 26, 125 S.Ct. 1254. This examination, however, is for the sole purpose of determining which part of the statute the defendant violated. “[B]y so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant’s prior crime, as committed on a particular occasion, did or did not involve violent behavior.” Chambers v. United States, 555 U.S. 122, 125, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009).
Supreme Court precedent disallows a district court from determining whether the specific conduct of the defendant constituted a purposeful, violent, and aggressive act. See Shepard, 544 U.S. at 25, 125 S.Ct. 1254 (discussing the problems inherent in judicial fact-finding, especially after Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and noting that looking further into the facts surrounding a prior conviction likely would violate the standard set forth in Apprendi ). Thus, district courts may not decide on a case-by-case basis whether a defendant’s particular conduct in committing a prior violation of a general statute amounts to the type of violence allowing for the enhancements set forth in the ACCA and the Guidelines. United States v. Woods, 576 F.3d 400, 405-06 (7th Cir. 2009). The modified categorical approach therefore applies to only “a narrow range of cases” — those involving statutes encapsulating separate proscriptions, at least one of which constitutes a crime of violence. Taylor, 495 U.S. at 602, 110 S.Ct. 2143.
To the extent that there was any confusion on the issue, the Supreme Court clarified the proper use of the modified categorical approach in Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). There, the Supreme Court stated, in relevant part:
When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the “ ‘modified categorical approach’ ” ... permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record — including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of *199 law from a bench trial, and jury instructions and verdict forms.
Id. at 1273 (citation omitted). But these documents may be consulted only for the purpose of “determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction.” Nijhawan v. Holder, 557 U.S. 29, 41, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009).
Although not with a single voice, we have had occasion to address the proper use of the modified categorical approach since Johnson. In his concurrence in United States v. Vann, 660 F.3d 771 (4th Cir.2011) (en banc), Judge King, joined by Judges Motz, Gregory, and Davis, wrote the following: “Use of the modified categorical approach is only appropriate when the statute of conviction encompasses multiple distinct categories of behavior, and at least one of those categories constitutes an ACCA violent felony.” Id. at 778 (King, J., concurring). Moreover, Judge Keenan, joined by Chief Judge Traxler and Judges Agee, Wynn, and Diaz, stated that “[t]he issue [of] whether we may apply the modified categorical approach under the ACCA depends on an examination of the different criminal elements of a statute and on the stated behaviors that these elements proscribe, not on any particular conduct that may be encompassed by a given statutory proscription.” Id. at 801 (Keenan, J., concurring). These statements, which commanded a majority of the judges of this Court, suggest that district courts may apply the modified categorical approach to a statute only if it contains divisible categories of proscribed conduct, at least one of which constitutes — by its elements — a violent felony.
The majority of our sister circuits that have considered the question likewise have held that the modified categorical approach applies only to those statutory offenses in which the statute itself is divisible. See, e.g., United States v. Miranda-Ortegon, 670 F.3d 661, 663 (5th Cir.2012) (footnote omitted) (‘We may take a. modified categorical approach, permitting consultation of the allegations in the charging instrument, if the statute of conviction has disjunctive elements. But we may look beyond the elements and the fact of conviction only for the limited purpose of ascertaining which of the disjunctive elements the charged conduct implicated.”); United States v. Baker, 665 F.3d 51, 55 (2d Cir.2012) (per curiam) (stating that the statute of the prior conviction must be divisible such that it defines the violent felony in a separate subsection or component of a disjunctive list); United States v. Koufos, 666 F.3d 1243, 1251 (10th Cir. 2011) (“[The modified categorical] approach does not involve a subjective inquiry into the facts of the case; instead, we seek to determine ‘which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face.’ ” (quoting United States v. Sanchez-Garcia, 501 F.3d 1208, 1211 (10th Cir.2007))); United States v. Mahone, 662 F.3d 651, 654 (3d Cir.2011) (“When the enumerating statute invites inquiry or the statute of conviction is phrased in the disjunctive, the sentencing court applies a modified approach, rather than the formal categorical approach.”); United States v. Williams, 627 F.3d 324, 327-28 (8th Cir.2010) (stating that when the statute of conviction encompasses some conduct that qualifies as a crime of violence and some that does not, it is appropriate for the district court to use the modified categorical approach wherein it consults Shepard-wppvoved documents to determine the portion of the statute that was the basis for the prior conviction); Woods, 576 F.3d at 404-05 (emphasizing that the appropriate way to apply the modified categorical approach is to look, not to *200 the conduct of the defendant, but to which part of a divisible statute the defendant violated). But see United States v. Aguila-Montes de Oca, 655 F.3d 915, 932-35 (9th Cir.2011) (en banc) (stating that the Fourth Circuit, in Rivers, “limited the modified categorical approach to the divisible statute situation” but rejecting that rule for the Ninth Circuit).
When examining a prior conviction to determine if it is a crime of violence, the Supreme Court has counseled that the district court must look not at the manner in which the defendant in fact committed the crime, but at the statutory violation charged. Begay, 553 U.S. at 141, 128 S.Ct. 1581. Thus, if the statute is divisible, with some categories constituting a crime of violence and some not constituting a crime of violence, then it is appropriate for the district court to employ the modified categorical approach and to examine Shepard-approved documents to ascertain whether the defendant violated a crime-of-violence category of the statute. But if the district court were to apply the modified categorical approach to an indivisible statute, it would be required to look at the manner in which the defendant committed the crime (i.e., the specific factual circumstances of the crime) in direct contravention of Supreme Court dictates.
In our view, the Supreme Court made clear in Johnson that the modified categorical approach necessarily applies only to those statutory offenses in which the statute itself is divisible. It did so by stating that the district court can make factual inquiries only when “the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not.” Johnson, 130 S.Ct. at 1273. That is, the Supreme Court explicated that in employing the modified categorical approach the district court may look to the trial record only to “determine which statutory phrase was the basis for the conviction.” Id. Any cases which have held to the contrary were necessarily overruled by Johnson.
Consequently, conforming to Supreme Court precedent, and joining the majority of our sister circuits to consider the issue, we hold that the modified categorical approach applies only to those statutory offenses in which the statute itself is divisible. To hold otherwise would be to sanction the district court conducting a mini-trial to resolve whether the actions of the defendant amounted to a crime of violence. See United States v. Spence, 661 F.3d 194, 198 (4th Cir.2011) (“By [properly] applying the categorical and modified categorical approaches, sentencing courts avoid conducting ‘mini-trials’ for each prior offense, which would constitute an inconsistent and unreliable method on which to base enhanced sentences. Moreover, use of such mini-trials to determine the nature of an underlying crime potentially would violate a defendant’s Sixth Amendment rights.” (citation omitted)). Of course, what one district court might find as violent behavior on the part of the defendant, another district court might not so find. Thus, sometimes the particular crime would be considered a crime of violence and sometimes it would not. Moreover, it would permit district courts to make this determination based on often vague or uncertain paper records, not intended to serve as such fact-finding tools. This is barred by Supreme Court precedent.
B.
As noted above, in 1999, Gomez pleaded guilty to one count of child abuse, in violation of Maryland Code 1957, Article 27, § 35C, at which time she admitted that, *201 to punish her son, she had burned the bottoms of his feet with a candle.
Section 35C defines the term “abuse” as follows:
(i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that indicate that the child’s health or welfare is harmed or threatened thereby; or
(ii) Sexual abuse of a child, whether physical injuries are sustained or not.
Maryland Code 1957, Article 27, § 35C. There is no dispute between the parties that Gomez’s conduct constituted abuse as defined in subsection (i).
Here, we begin — as we must — by examining § 35C(i). In doing so, we recognize that it does not require the use of physical force. Pursuant to § 35C(i), a defendant may be found guilty of physical child abuse by committing an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force against a child. See State v. Fabritz, 276 Md. 416, 348 A.2d 275, 280 (1975). Further, § 35C(i) contains no divisions — either facially or judicially determined — regarding the use or absence of physical force. Moreover, there are no separate categories in § 35C(i) delineating between affirmative and nonaffirmative acts.
This is not to say that the statute itself is indivisible. It is divisible. Section 35(c) can be divided into two categories: physical abuse and sexual abuse. Moreover, physical abuse can be divided further into subcategories: cruel or inhumane treatment, and malicious acts. But, notably, it is not divisible into forceful or nonforceful acts.
The statute is, however, expansive. For instance, the Maryland Court of Appeals observed the following:
When examining the breadth of conduct that fell under the umbrella of child sexual abuse in Section 35C and also falls within the current iteration of the child abuse statute, we consistently have observed that the Legislature intended for the statute to cover a wide range of conduct.
Crispino v. State, 417 Md. 31, 7 A.3d 1092, 1099 (2010).
Similarly, thirty-five years before Crispino, Maryland’s highest court stated the following:
In making it an offense for a person having custody of a minor child to ‘cause’ the child to suffer ‘a physical injury,’ the Legislature did not require that the injury result from a physical assault upon the child or from any physical force initially applied by the accused individual; it provided instead, in a more encompassing manner, that the offense was committed if physical injury to the child resulted either from a course of conduct constituting ‘cruel or inhumane treatment’ or by ‘malicious act or acts.’
Fabritz, 348 A.2d at 280. The court later explained that the philosophical underpinning of the statute is that “[cjhild abuse and the underlying crimes involve separate societal evils.” Fisher v. State, 367 Md. 218, 786 A.2d 706, 721 (2001) (quoting a letter from an Assistant Attorney General, with approval). “The underlying crime is one of violence against a member of society. Child abuse is a breach of custodial or familial trust. The two crimes should be punished separately and the person who violates both laws should be exposed to a greater possible penalty.” Id. In other words, the gravamen of child abuse under § 35C is “the breach of custodial or familial trust[,]” and not the particular *202 manner in which the child was abused (i.e., with or without force).
Under Supreme Court precedent, for the modified categorical approach to apply to the facts of this case, we are required to separate forceful and nonforceful acts in § 35C(i). But, as already noted, that is impossible to do here in that every part of § 35C(i) can be accomplished with or without the use of physical force. That is, it is a violation of § 35C(i) when one with custodial or familial care of a child causes— with or without physical force — that child to sustain physical injury by means of “cruel or inhumane treatment or as a result of a malicious act.” § 35C(i).
In determining that Gomez’s prior conviction constituted a crime of violence, the district court looked at the manner in which she committed child abuse to determine whether it was a crime of violence. But, as detailed above, this violates the Supreme Court’s mandate that the district court is to look only to the crime of conviction, and not at the defendant’s conduct in committing the crime, to decide whether the defendant committed a crime of violence. Stated differently, the district court should have examined the trial record to determine whether Gomez committed a statutory violation constituting a crime of violence. Instead, it examined the trial record to decide if Gomez acted violently in abusing her son.
C.
Except for common law based crimes in which the offenses have been judicially defined, there are no post -Johnson Fourth Circuit cases examining an indivisible statute wherein we have approved use of the modified categorical approach to determine if a prior conviction was a crime of violence for enhancement purposes.
Nevertheless, according to the government, “[gjiven the relationship between assault and battery and physical child abuse under Maryland law, the applicability of the modified categorical approach to prior convictions for physical child abuse is reinforced by this Court’s precedent concerning the modified categorical approach and Maryland assault and battery convictions.” Thereafter, it points to the citation in Johnson of one of our cases, United States v. Simms, 441 F.3d 313 (4th Cir.2006), in support of its position that the Supreme Court approved of our use of the modified categorical approach as applied to Simms’s prior battery conviction under Maryland law. See Johnson, 130 S.Ct. at 1273.
We need not decide whether the Supreme Court meant to signal its approval, as we are unconvinced that Maryland’s assault and battery law has any bearing on our analysis as to the appropriateness of the use of the modified categorical approach in this case. Suffice it to say that the crime of assault and battery is based in common law and, as such, its elements are judicially determined. See United States v. Alston, 611 F.3d 219, 222 (4th Cir.2010) (stating that the common-law crime of assault in Maryland includes “the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings.” (quoting Md.Code Ann., Crim. Law § 3-201(b)) (internal quotation marks omitted)); United States v. Kirksey, 138 F.3d 120, 125 (4th Cir.1998) (“Because Maryland recognizes common law crimes, no statute defines their elements. But the Maryland case law fully articulates them.”). Here, however, we are concerned with the divisions within a statute, not a common law crime.
D.
In sum, as the Fifth Circuit held in Andino-Ortega, “[although the actual conduct described involved the use of physical *203 force, that is irrelevant for the purposes of this case. The inquiry is whether the use of physical force is an element under the statute of conviction, not whether the defendant’s actual conduct involved the use of physical force.” 608 F.3d at 310 n. 1. Hence, because there is no divisible use-of-force element under § 35C(i), the district court’s employment of the modified categorical approach to determine that it was a crime of violence was improper.
III.
In the alternative, the government maintains that, even if the district court erred in its determination of Gomez’s Guidelines range, the error was harmless because the district court’s imposition of the enhancement did not affect Gomez’s ultimate sentence. The government contends that “[b]ecause the court arrived at the 24-month sentence purely through reference to the section 3553(a) factors (especially deterrence), a remand to recalculate the advisory [Guidelines range would be a pointless exercise.” We are unconvinced.
For us to find harmless error, we must be certain that “(1) ... the district court would have reached the same result even if it had decided the [Guidelines issue the other way, and (2) a determination that the sentence would be reasonable even if the [Guidelines issue had been decided in the defendant’s favor.” United States v. Savillon-Matute, 636 F.3d 119, 123 (4th Cir. 2011) (quoting United States v. Keene, 470 F.3d 1347, 1349 (11th Cir.2006)) (internal quotation marks omitted).
Although the district court did a commendable job in considering the 18 U.S.C. 3553(a) factors in determining the sentence that it would impose, we are unable to state with any certainty that it would have imposed the same sentence had the sixteen-level enhancement not been in play.
With the enhancement, the Guidelines range was forty-one to sixty-one months’ imprisonment. But, without the enhancement, Gomez’s Guidelines range would have been eight to fourteen months’ imprisonment. Although the district court imposed a substantial downward variance in arriving at Gomez’s sentence of twenty-four months’ imprisonment, we can find nothing in the record to suggest that the district court would have varied upwards to arrive at a twenty-four month sentence. Thus, we are- unable to declare the error harmless.
IV.
For the foregoing reasons, we vacate Gomez’s sentence and remand for resentencing.

VACATED AND REMANDED.

. In United States v. Woods, 576 F.3d 400 (7th Cir.2009), the Seventh Circuit adopted a per se rule limiting the modified categorical approach to facially divisible statutes. The Fifth, and Eighth Circuits have similar policies. See, e.g., United States v. Gonzalez-Terrazas, 529 F.3d 293, 297-98 (5th Cir.2008); United States v. Boaz, 558 F.3d 800, 807-08 (8th Cir.2009). The Ninth Circuit, which had previously adopted the same rule as Woods, reversed course in United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir.2011) (en banc). It now applies the modified categorical approach to both divisible and indivisible statutes. The Sixth and Tenth Circuits follow a similar approach. See, e.g., United States v. Ventura-Perez, 666 F.3d 670 (10th Cir.2012); United States v. Armstead, 467 F.3d 943 (6th Cir.2006). The remaining circuits do not appear to have conclusively resolved the issue either way.