PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4362

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LEROY DEON HEMINGWAY,

Defendant – Appellant.

------------------------------

EVELINA JAN NORWINSKI,

Court-Assigned Amicus Counsel.

Appeal from the United States District Court for the District of
South Carolina, at Florence.   R. Bryan Harwell, District Judge.
(4:11-cr-00771-RBH-1)

Argued:  September 17, 2013          Decided:  October 31, 2013

Before KING, SHEDD, and THACKER, Circuit Judges.

Vacated and remanded by published opinion.  Judge King wrote the
opinion, in which Judge Shedd and Judge Thacker joined.

**ARGUED:** William Fletcher Nettles, IV, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Florence, South Carolina, for Appellant.
Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellee.  Justin Sanjeeve Antonipillai,
ARNOLD & PORTER, LLP, Washington, D.C., for Court-Assigned

Amicus Counsel. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, A. Bradley Parham, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Florence, South Carolina; Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Deputy Assistant Attorney General, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Laura K. D'Allaird, ARNOLD & PORTER, LLP, Washington, D.C., for Court-Assigned Amicus Counsel.

———————

KING, Circuit Judge:

In November 2011, Leroy Deon Hemingway pleaded guilty in the District of South Carolina to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Hemingway to fifteen years in prison, ruling that he was subject to the mandatory fifteen-year minimum required by the Armed Career Criminal Act (the "ACCA"), see 18 U.S.C. § 924(e). On appeal, Hemingway maintains that the court erred in relying on his 2002 South Carolina conviction for the common law crime of assault and battery of a high and aggravated nature ("ABHAN") to impose the mandatory minimum sentence. More specifically, Hemingway contends that ABHAN is not categorically a predicate "violent felony" under the ACCA, and that the court erred in ruling otherwise. The government agrees with Hemingway that ABHAN is not categorically an ACCA violent felony, but contends that use of the modified categorical approach is appropriate and that, utilizing such an approach, Hemingway's ABHAN offense constitutes an ACCA violent felony. As explained below, we agree with Hemingway and the government that ABHAN is not categorically a violent felony. We further conclude, contrary to the government's position, that the modified categorical approach has no role to play in this matter. See Descamps v. United States, 133 S. Ct. 2276 (2013). Accordingly, we vacate the judgment and remand for resentencing.

3

I.

A.

Pursuant to the ACCA, a defendant convicted of violating 18 U.S.C. § 922(g)(1), and who has three previous convictions "for a violent felony or a serious drug offense," is subject to a mandatory fifteen-year minimum sentence. See 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Id. § 924(e)(2)(B). Subsection (e)(2)(B)(i) is commonly referred to as the "force clause." As the Supreme Court has recognized, the force clause applies only to those crimes that involve "violent force — that is, force capable of causing physical pain or injury to another person." See Johnson v. United States, 559 U.S. 133, 140 (2010). Subsection (e)(2)(B)(ii) identifies enumerated offenses — burglary, arson, extortion, and offenses involving the use of explosives — and then contains an "otherwise involves" clause. That clause is more commonly referred to as the "residual clause." See Chambers v. United States, 555 U.S. 122, 124 (2009).

4

The residual clause of subsection (e)(2)(B)(ii) is the only aspect of the ACCA at issue in this appeal. The government and Hemingway quite properly agree that ABHAN — the South Carolina common law crime at issue — neither satisfies the force clause nor constitutes an enumerated offense.[1] Accordingly, an ABHAN offense can be an ACCA violent felony only if, consistent with the residual clause, it "otherwise involves conduct that presents a serious potential risk of physical injury to another."

B.

1.

As we have recognized, "[i]n assessing whether an offense constitutes an ACCA predicate offense, two types of analyses are potentially applicable — known as the 'categorical' approach and the 'modified categorical' approach." United States v. Harcum, 587 F.3d 219, 222 (4th Cir. 2009). These approaches stem from the Supreme Court's decision in Taylor v. United States, 495 U.S. 575 (1990), "which established the rule for determining when a defendant's prior conviction counts as one of ACCA's enumerated predicate offenses." See Descamps v. United States,

---

[1] At the time of Hemingway's ABHAN conviction, ABHAN was a South Carolina common law crime. In 2010, South Carolina codified ABHAN as a felony offense. See S.C. Code Ann. § 16-3-600(B)(1).

5

133 S. Ct. 2276, 2283 (2013). In Taylor, the Court adopted a more "formal" elements-focused categorical approach that authorized sentencing courts to "'look only to the statutory definitions' — i.e., the elements — of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" Descamps, 133 S. Ct. at 2283 (quoting Taylor, 495 U.S. at 600). The Taylor Court also recognized a "narrow range of cases" where a sentencing court could utilize the "modified categorical approach," that is, "look beyond the statutory elements to 'the charging paper and jury instructions'" pertaining to the underlying previous conviction. See id. at 2283-84 (quoting Taylor, 495 U.S. at 602). The Taylor Court contemplated that the modified categorical approach would be used only when the definition of the offense of conviction "comprises multiple, alternative versions of the crime." Id. at 2284. As explained in Descamps, "Taylor permitted sentencing courts, as a tool for implementing the categorical approach, to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Id.[2]

---

[2] In Shepard v. United States, the Supreme Court further clarified the role and scope of the modified categorical approach. See 544 U.S. 13 (2005). The Shepard decision made clear that the "enquiry under the ACCA . . . is limited to the terms of the charging document, the terms of a plea agreement or (Continued)

The central tenet of Taylor remains valid and applicable: As a general proposition, to determine whether a previous conviction is a violent felony, a sentencing court "employ[s] the categorical approach" and, in using that approach, "'look[s] only to the fact of conviction and the statutory definition of the prior offense, and do[es] not generally consider the particular facts disclosed by the record of conviction.'" Sykes v. United States, 131 S. Ct. 2267, 2272 (2011) (quoting James v. United States, 550 U.S. 192, 202 (2007)). It bears repeating that "[t]he categorical approach focuses on the elements of the prior offense rather than the conduct underlying the conviction." United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013).

---

transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Id. at 26. Accordingly, pursuant to Shepard and its progeny, a sentencing court can, in limited circumstances, "scrutinize a restricted set of materials" to determine "which statutory phrase was the basis for the conviction." See Descamps, 133 S. Ct. at 2284; see also United States v. Carthorne, 726 F.3d 503, 511 (4th Cir. 2013). As we have recently emphasized, a sentencing court's examination of Shepard documents, i.e., the "limited universe of documents relevant to the underlying conviction," may be used "for the sole purpose of determining which part of the statute the defendant violated." United States v. Gomez, 690 F.3d 194, 198 (4th Cir. 2012).

7

2.

In June of this year, the Supreme Court rendered its Descamps decision, which constitutes a vastly important explication of the guiding legal principles concerning proper utilization of the categorical approach and the modified categorical approach. As the Court strongly reiterated, "the modified approach serves a limited function" and applies only in a "'narrow range of cases.'" See Descamps, 133 S. Ct. at 2283 (quoting Taylor, 495 U.S. at 602). The Descamps Court then assessed whether a California burglary conviction was for an ACCA enumerated offense, emphasizing the limited role of the modified categorical approach, i.e., simply to "help[] effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Id. (emphasis added). Focusing on California's burglary statute, the Court determined that the modified categorical approach had "no role to play" because the statute was not divisible. Id. at 2285. The Court further concluded that Descamps's burglary offense was not categorically an ACCA violent felony. Id. at 2293.

Notably, the Descamps decision underscored the validity of the divisibility analysis that our Court had already employed. See United States v. Gomez, 690 F.3d 194 (4th Cir. 2012). In

8

Gomez, Judge Floyd carefully explained that the categorical approach — rather than the modified categorical approach — was appropriate for deciding whether a Maryland child abuse conviction was for a "crime of violence" under the Sentencing Guidelines. See id. at 203. Applying the divisibility analysis, Gomez recognized that "district courts may apply the modified categorical approach to a statute only if it contains divisible categories of proscribed conduct, at least one of which constitutes — by its elements — a violent felony." Id. at 199.

Because Gomez and Descamps each involved statutory — rather than common law — offenses, in that context those decisions are distinguishable from the situation we face today. Indeed, Descamps explicitly "reserve[d] the question whether, in determining a crime's elements, a sentencing court should take account not only of the relevant statute's text, but of judicial rulings interpreting it." 133 S. Ct. at 2291. The Court thus left open the issue of whether the divisibility analysis also applies to common law offenses. Likewise, Gomez did not address the issue of whether the divisibility analysis applies to a common law crime, because that appeal was concerned only with "the divisions within a statute, not a common law crime." 690 F.3d at 202.

9

II.

Having identified certain of the applicable legal principles, we turn to Hemingway's contention on appeal — that his South Carolina ABHAN conviction is not for an ACCA violent felony. The relevant facts underlying his fifteen-year sentence are not disputed.

On June 28, 2011, a grand jury returned an indictment charging Hemingway with illegal possession of a firearm (a 9mm Glock pistol) plus ammunition, having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count One), and possessing with intent to distribute cocaine base (or "crack"), in contravention of 21 U.S.C. § 841(a)(1) (Count Two). Hemingway pleaded guilty to Count One only, without a plea agreement, on November 29, 2011.[3] The probation officer then prepared Hemingway's presentence report (the "PSR"), recommending that his sentence be enhanced under the ACCA because four of his previous convictions were for ACCA predicate offenses.[4] According to the PSR, the applicable Guidelines range

---

[3] After Hemingway pleaded guilty to Count One, the district court, on motion of the government at the plea proceeding, dismissed Count Two without prejudice.

[4] Hemingway's ACCA predicate offenses, as identified in the PSR, were all state crimes in South Carolina. The record shows: (1) a conviction in 1998 for attempted strong arm robbery; (2) convictions in 2001 for possession with intent to distribute crack and possession with intent to distribute crack within (Continued)

10

was 180 to 188 months (reflecting the ACCA's statutory minimum of fifteen years, i.e., 180 months).

On January 11, 2012, Hemingway interposed his objections to the PSR, asserting that two of the four crimes identified in the PSR — ABHAN and its lesser included offense of assault of a high and aggravated nature ("AHAN") — are not predicate offenses under ACCA because they do not constitute ACCA violent felonies. More specifically, Hemingway maintained that neither ABHAN nor AHAN are violent felonies under the categorical approach because they can each be committed negligently and without violent injury. Hemingway further contended that his ABHAN and AHAN offenses cannot constitute ACCA violent felonies under the modified categorical approach because the relevant South Carolina indictments were inadequate to the job of employing that approach.

Strikingly, Hemingway was not charged in the South Carolina indictments with either ABHAN or AHAN. Rather, on September 25, 2001, a two-count indictment was returned in Horry County charging Hemingway with lynching in the second degree and

close proximity of a school (counted together as a single ACCA predicate offense); (3) the 2002 ABHAN conviction; and (4) a conviction in 2002 for assault of a high and aggravated nature ("AHAN"). Hemingway does not dispute that attempted strong arm robbery and possession with intent to distribute are ACCA predicate offenses.

11

rioting. According to the state court's sentencing sheet concerning that indictment, Hemingway pleaded guilty to the AHAN offense on June 11, 2002. On April 29, 2002, a single-count indictment was returned in Horry County, charging Hemingway with assault with intent to kill. The state court's sentencing sheet regarding that indictment indicates that Hemingway pleaded guilty to the ABHAN offense, and that the plea proceedings were also concluded on June 11, 2002.

The PSR rejected Hemingway's contention that his ABHAN conviction could not be for an ACCA predicate offense under the categorical approach. Relying on two unpublished opinions, United States v. Wiley, 449 F. App'x 269 (4th Cir. Oct. 12, 2011), and United States v. Moultrie, 445 F. App'x 630 (4th Cir. Sept. 6, 2011), plus our published decision in United States v. Wright, 594 F.3d 259 (4th Cir. 2010), the PSR maintained that ABHAN is categorically an ACCA violent felony. During the April 26, 2012 sentencing hearing, the government argued that Hemingway's ABHAN conviction was for an ACCA violent felony under both the categorical approach and the modified categorical approach.

At the conclusion of the sentencing hearing, the district court ruled that Hemingway's ABHAN offense is an ACCA violent

felony.[5] In so doing, the court first observed that the modified categorical approach was inapplicable to Hemingway's ABHAN conviction because he "did not plead as indicted" and thus the indictment could not be used to ascertain the nature of his ABHAN offense. J.A. 43.[6] The court then turned to the categorical approach. After surveying the applicable South Carolina legal principles, the court agreed with the parties that ABHAN is not categorically a violent felony under the ACCA's force clause, recognizing that the "South Carolina courts have interpreted ABHAN to include both forceful and nonforceful conduct." Id. at 48. The court then determined, however, that ABHAN is nevertheless a violent felony under the residual clause. Id. at 50. As a result, the court adopted the PSR and sentenced Hemingway to fifteen years (180 months) in prison.

Hemingway filed a timely notice of appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Because the government has altered its position on

---

[5] Neither the probation officer nor the sentencing court addressed Hemingway's objection to use of the AHAN conviction. Because Hemingway does not dispute the proposition that two of his other previous convictions — for attempted strong arm robbery and possession with intent to distribute — were for ACCA predicate offenses, the court's ruling that ABHAN is an ACCA violent felony was sufficient to trigger the fifteen-year minimum sentence.

[6] Our citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

13

appeal and now concedes that ABHAN is not categorically an ACCA violent felony, we assigned amicus counsel (the "Amicus") to brief and argue the legal position adopted by the sentencing court — that ABHAN is categorically an ACCA violent felony.[7]

## III.

The issue we must resolve in this appeal is whether ABHAN constitutes a "violent felony" under the ACCA. Whether a prior offense is an ACCA violent felony is a question of law that we review de novo. See United States v. White, 571 F.3d 365, 367 (4th Cir. 2009). Contrary to its position at sentencing, the government agrees with Hemingway on appeal that the district court erred in utilizing the categorical approach to rule that his ABHAN conviction was for an ACCA violent felony. The government maintains, however, that the court essentially committed harmless error in that the ABHAN conviction should be analyzed under the modified categorical approach, and that the record shows that Hemingway's ABHAN conviction was for an ACCA violent felony. For his part, Hemingway agrees with the government that an ABHAN offense is not categorically an ACCA

---

[7] The Amicus lawyers — particularly Mr. Antonipillai, who argued the legal position adopted by the district court — have ably discharged their duties, and the Court commends their efforts.

14

violent felony, but contends that, pursuant to Descamps v. United States, 133 S. Ct. 2273 (2013), and its progeny, the modified categorical approach has no role to play in these proceedings. Hemingway thus seeks appellate relief by way of a judgment vacating his sentence and remanding for resentencing. Finally, the Amicus argues that the district court got the sentence right from a legal standpoint — maintaining that Descamps has no application here, that the categorical approach applies, that ABHAN is categorically an ACCA violent felony, and that Hemingway's fifteen-year sentence should be affirmed.

## A.

The first step of our review relates to whether the district court properly applied the categorical approach or, as the government now maintains, whether the court should have analyzed Hemingway's ABHAN conviction under the modified categorical approach. As explained below, Descamps and its progeny control our disposition on this point. In the post-Descamps world, "the modified categorical approach is applicable only 'when a defendant was convicted of violating a divisible statute,' and then, only 'to determine which statutory phrase was the basis for the conviction." United States v. Carthorne, 726 F.3d 503, 511 (4th Cir. 2013) (quoting Descamps, 133 S. Ct. at 2285); see United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013). Meanwhile, a criminal offense is

15

"divisible" only "when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'" Descamps, 133 S. Ct. at 2285 (quoting Nijhawan v. Holder, 557 U.S. 29, 41 (2009)).

1.

Although none of our sister circuits have applied Descamps's divisibility analysis to a common law offense in an ACCA setting, we agree with Hemingway and the government that such an application is entirely appropriate. There is simply no material distinction that can be made between common law and statutory offenses in this context. As a practical matter, state criminal statutes, for the most part, codify existing common law crimes. See United States v. Walker, 595 F.3d 441, 444 (2d Cir. 2010) ("Indeed, criminal statutes often incorporate elements of common law offenses, and in these circumstances, we have looked to the common law to determine whether the prior conviction was a qualifying predicate offense."). In multiple instances, state criminal statutes define offenses by reference to the common law, leaving reviewing courts to fill in the essential elements. See, e.g., Carthorne, 726 F.3d at 512 (explaining that "[t]he terms 'assault' and 'battery' are not defined in this statute but are defined by common law in Virginia"); United States v. Alston, 611 F.3d 219, 222 (4th Cir. 2010) (observing that, under the Maryland Code, "[a]ssault is

16

defined to mean the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings" (internal quotation marks omitted)).

Our Court has consistently deferred to the state courts in identifying the elements of state common law offenses. See, e.g., United States v. Kirksey, 138 F.3d 120, 125 (4th Cir. 1998) (recognizing that, "[b]ecause Maryland recognizes common law crimes, no statute defines their elements. But the Maryland case law fully articulates them"). Furthermore, it is well-settled that a common law offense can be a predicate offense under the ACCA and the Guidelines. See, e.g., United States v. Jenkins, 631 F.3d 680 (4th Cir. 2011) (employing categorical approach and holding that Maryland common law offense of resisting arrest is "crime of violence" for purposes of Guidelines); United States v. Coleman, 158 F.3d 199, 204 (4th Cir. 1998) (en banc) (applying modified categorical approach and holding that "a Maryland conviction for common-law assault is not per se a 'violent felony'"). The foregoing principle is also consistent with the views of our sister circuits. See Walker, 595 F.3d at 444 (observing that, although Taylor and Second Circuit precedent do not, "by their terms, apply to statutory offenses, neither . . . suggests that the analysis is different with respect to common law crimes, nor is there any reason in principle that it should be"); United States v.

17

*Melton*, 344 F.3d 1021, 1026 (9th Cir. 2003) ("Where, as here, the state crime is defined by specific and identifiable common law elements, rather than by a specific statute, the common law definition of a crime serves as a functional equivalent of a statutory definition.").

Although the *Descamps* Court left the issue unresolved, nothing in its decision suggests that a divisibility analysis does not apply with equal force to a common law offense. In explaining the bases for its decision, the Court carefully reviewed the "three grounds for establishing [its] elements-centric, formal categorical approach" in *Taylor* and emphasized the continuing persuasiveness of each. See *Descamps*, 133 S. Ct. at 2287-89 (citing *Taylor v. United States*, 495 U.S. 575, 600-02 (1990)). The *Descamps* Court first assessed the statutory text and history of the ACCA, explaining that its statutory term "previous convictions" plainly suggests that "'Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.'" *Id.* at 2287 (quoting *Taylor*, 495 U.S. at 599). The Court also emphasized the "categorical approach's Sixth Amendment underpinnings," given that, "[u]nder ACCA, the court's finding of a predicate offense indisputably increases the maximum penalty." *Id.* at 2288. As the Court reasoned, such a finding

18

"would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." Id. Finally, the Court cautioned against the "difficulties and inequities" inherent in the modified categorical approach, particularly where the underlying conviction results from a guilty plea. Id.

The initial reasons articulated in Descamps for use of the divisibility analysis — first, the text and history of the ACCA, and, second, Sixth Amendment concerns — forcefully support the proposition that the same analysis must be applied to common law crimes. Put simply, nothing in the ACCA suggests that Congress intended for the courts to consider only the fact of conviction for a statutory offense, but to examine the facts underlying a conviction for a common law crime. In addition, designating a common law crime as an ACCA predicate offense presents the identical Sixth Amendment concerns as those arising when the previous conviction was a statutory offense. Finally, Descamps's third reason for use of the divisibility analysis — the difficulties and inequities that would arise from looking beyond the fact of conviction — may well be of greater concern in the context of common law crimes. To be sure, common law offenses are often not as clearly defined as their statutory counterparts, and thus may be more susceptible to disparate treatment from the sentencing courts.

19

In these circumstances, we are satisfied to conclude that the Descamps divisibility analysis is applicable to the question of whether a common law offense constitutes an ACCA predicate crime. Adopting the language of the Supreme Court, the modified categorical approach has "no role to play" where the previous crime was an indivisible common law offense. See Descamps, 131 S. Ct. at 2285.

2.

In evaluating a state court conviction for ACCA predicate offense purposes, a federal court is "bound by the [state supreme court's] interpretation of state law, including its determination of the elements of" the potential predicate offense. Johnson v. United States, 559 U.S. 133, 138 (2010). In that respect, the Supreme Court of South Carolina has ruled that "[t]he elements of ABHAN are . . . [1] the unlawful act of violent injury to another, accompanied by [2] circumstances of aggravation." State v. Easler, 489 S.E.2d 617, 624 (S.C. 1997). That court has explained the aggravation element of ABHAN in the following terms:

> The circumstances of aggravation include: use of a deadly weapon, infliction of serious bodily injury, intent to commit a felony, disparity in age, physical condition or sex, indecent liberties, purposeful infliction of shame, resistance of lawful authority, and others.

20

Id. at 624 n.17; see Dempsey v. State, 610 S.E.2d 812, 815 (S.C. 2005) (identifying same circumstances of aggravation).

It is clear from the South Carolina decisions that the judiciary's list of circumstances of aggravation is non-exhaustive. Although the South Carolina courts have provided several examples of "circumstances of aggravation," they have never "list[ed] potential offense elements in the alternative," so as to warrant our application of the modified categorical approach. See Descamps, 133 S. Ct. at 2283.[8] Importantly, the Descamps Court explicitly rejected the idea that there is no "real distinction between divisible and indivisible statutes," because an indivisible statute "creates an implied list of every means of commission that otherwise fits the definition of a given crime." Id. at 2289 (internal quotation marks omitted). As the Court observed, a court could always create an implied list, "[b]ut the thing about hypothetical lists is that they are, well, hypothetical." Id. at 2290. By way of example, the

---

[8] We are unable to adopt the government's suggestion that the courts of South Carolina have, through "custom and practice," turned the non-exhaustive list of circumstances of aggravation into an exhaustive one. Notably, the government offers no evidence that any South Carolina court has limited the second element of ABHAN to the aggravating circumstances provided in the often-utilized list. Furthermore, the South Carolina legislature, when it codified ABHAN, failed to define ABHAN by reference to any aggravating circumstances or elements. See S.C. Code Ann. § 16-3-600(B)(1); see also supra note 1.

Court explained that "[a]s long as the statute itself requires only an indeterminate 'weapon,' that is all the indictment must (or is likely to) allege . . . [a]nd most important, that is all the jury must find to convict the defendant." Id.

The "circumstances of aggravation" consistently identified by the South Carolina courts are neither elements nor subelements of ABHAN. Instead, they simply identify specific ways the second element of ABHAN can be satisfied. As our good Chief Judge recently observed, "alternative means" of committing an offense, "rather than elements," are "simply irrelevant to our inquiry" under the ACCA. See Cabrera-Umanzor, 728 F.3d at 353. Because ABHAN, as defined by the courts of South Carolina, "'does not concern any list of alternative elements,' the modified categorical approach 'has no role to play.'" See United States v. Royal, ___ F.3d ___, No. 10-5296, 2013 WL 5433630, at *7 (4th Cir. Oct. 1, 2013) (quoting Descamps, 133 S. Ct. at 2285). Consistent with the foregoing, the question of whether an ABHAN conviction is for an ACCA violent felony must be determined, as the district court ruled, solely by application of the categorical approach.[9]

---

[9] Our decision today that ABHAN must — for ACCA purposes — be analyzed under the categorical approach is not undercut by earlier unpublished decisions suggesting that it might be appropriate to assess whether an ABHAN offense is a violent felony (or crime of violence) under the modified categorical
(Continued)

22

B.

Having concluded that the categorical approach is the appropriate method of analysis, we must decide whether the sentencing court erred in ruling that ABHAN is categorically an ACCA violent felony.[10]  The government — reversing the position that it espoused at sentencing — has now conceded that ABHAN is not categorically an ACCA violent felony, and Hemingway agrees with the government on this point.  The Amicus contends, however, that Hemingway's ACCA sentence should be affirmed as

approach.  See, e.g., United States v. Wells, 484 F. App'x 756, 757 (4th Cir. June 22, 2012) (vacating decision that ABHAN is categorically a Guidelines crime of violence); United States v. Hamilton, 480 F. App'x 217, 219 (4th Cir. May 10, 2012) (vacating decision that ABHAN is categorically an ACCA violent felony); United States v. Johnson, 475 F. App'x 494, 496 (4th Cir. Apr. 12, 2012) (vacating decision that ABHAN is categorically a crime of violence); United States v. Ward, 439 F. App'x 258, 259 (4th Cir. July 18, 2011) (affirming application of modified categorical approach and "[a]ssuming without deciding that ABHAN is not a crime of violence per se"). These unpublished decisions are simply not controlling precedent and, more importantly, they predate Descamps.

Our decision in United States v. Spence, 661 F.3d 194 (4th Cir. 2011), similarly does not undercut our ruling today.  In Spence, we applied the modified categorical approach and determined that an ABHAN conviction qualified as a predicate offense under 18 U.S.C. § 2252A(b)(2) — the "sexual abuse enhancement."  Spence thus relates to a distinct sentencing provision and also predates Descamps.

[10] Because the categorical approach applies in this case, we need not resolve whether, as the government asserts, the indictment that resulted in Hemingway's ABHAN conviction could support use of the modified categorical analysis.

23

imposed under the categorical approach. According to the Amicus, we are bound by our precedent of United States v. Wright, 594 F.3d 259 (4th Cir. 2010), to rule that ABHAN is categorically a violent felony. In addition to relying on Wright, the Amicus maintains, consistent with the position adopted by the sentencing court, that ABHAN is categorically an ACCA violent felony under Supreme Court precedent. We analyze these issues — whether Wright is controlling precedent and, if not, whether ABHAN is nevertheless categorically an ACCA violent felony — in turn.

1.

We begin with Wright, where the central issue was whether Wright's three juvenile convictions were ACCA predicate offenses, not whether ABHAN was categorically an ACCA violent felony. It was undisputed that Wright had an adult ABHAN conviction, but Wright did not present any appellate issue relating to the use of that ABHAN conviction as an ACCA predicate offense. Our opinion briefly discussed the ABHAN conviction, referencing only the force clause and stating, without elaboration, that "Wright's adult conviction for [ABHAN] plainly counts as one of the required three predicate violent felony convictions." Wright, 594 F.3d at 263.

Notwithstanding the Amicus's characterization of Wright as controlling precedent, that decision does not dictate the

24

outcome of this appeal. Put simply, the issue before us here —
whether ABHAN is categorically an ACCA violent felony — was not
contested in Wright. Moreover, Wright solely (and merely
summarily) addressed whether an ABHAN offense was a violent
felony under the force clause. An ACCA analysis under the force
clause — whether an offense "has as an element the use,
attempted use, or threatened use of physical force," see
§ 924(e)(2)(B)(i), — is distinct from the residual clause
analysis that we employ today. In any event, Wright predates
Johnson — the Supreme Court's most recent force clause decision
— which explained that a crime only satisfies the force clause
when it requires "violent force — that is, force capable of
causing physical pain or injury to another person." See
Johnson, 559 U.S. at 140. As the government properly concedes,
Johnson precludes reliance on the force clause to count ABHAN as
an ACCA predicate offense because ABHAN can be committed "even
if no real force was used against the victim." See State v.
Primus, 564 S.E.2d 103, 106 n.4 (S.C. 2002). In these
circumstances, we are not compelled by Wright to deem ABHAN to
be an ACCA violent felony.[11]

---

[11] The district court did not rely on Wright, although the
court did discuss United States v. Wiley, 449 F. App'x 269 (4th
Cir. Oct. 12, 2011), and United States v. Moultrie, 445 F. App'x
630 (4th Cir. Sept. 6, 2011), unpublished decisions that invoke
(Continued)

25

Looking beyond Wright, we assess whether ABHAN is yet categorically an ACCA violent felony. If we were deciding whether a previous crime qualifies as an ACCA violent felony by virtue of being an enumerated offense, we would be called upon to "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime — i.e., the offense as commonly understood." Descamps, 133 S. Ct. at 2281. As the Supreme Court explained, "[i]f the relevant statute has the same elements as the 'generic' ACCA crime, then the prior conviction can serve as an ACCA predicate." Id. at 2283.

Here, where we assess whether a previous crime qualifies as an ACCA violent felony under the residual clause, a different analysis applies, because there is often no single "generic" crime to which the underlying crime can be compared. See United States v. Torres-Miguel, 701 F.3d 165, 170 (4th Cir. 2012) (explaining that "[t]o require a defendant to demonstrate that

---

Wright for the proposition that ABHAN is a violent felony. See J.A. 44-47. Nevertheless, the court recognized, as we do herein, that ABHAN does not satisfy the force clause because "South Carolina courts have interpreted ABHAN to include both forceful and nonforceful conduct as defined by the Supreme Court in . . . Johnson." Id. at 48.

his prior state offense does not fall within this residual category by proving that it is not a 'generic' 'other offense' is to require the impossible, for there is no generic 'other offense.'"). In certain circumstances, however, a generic crime comparison is an essential aspect of a residual clause analysis. The Supreme Court's 2007 decision in James v. United States establishes that point. See 550 U.S. 192 (2007). There, in assessing whether James's attempted burglary conviction was an ACCA violent felony under the residual clause, the Court identified the relevant inquiry as "whether the risk posed by the [crime] is comparable to that posed by its closest analog among the enumerated offenses." Id. at 203 (emphasis added). Because an attempted burglary offense could be readily compared to one of the enumerated offenses (i.e., burglary), the appropriate inquiry was guided by comparing James's attempted burglary offense to the "generic" definition of burglary. See id. at 207.

The circumstances were different in Begay v. United States, where the Supreme Court assessed whether a New Mexico driving under the influence offense (a "DUI") qualified as an ACCA violent felony. See 553 U.S. 137 (2008). There, the Court distinguished a DUI from ACCA's enumerated offenses because "the listed crimes all typically involve purposeful, violent, and aggressive conduct." Id. at 144-45. In contrast, the Court

27

explained, a DUI is "most nearly comparable to crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." Id. at 145 (internal punctuation omitted). Cognizant that the enumerated offenses "illustrate the kinds of crimes that fall within the statute's scope" and "[t]heir presence indicates that the statute covers only similar crimes, rather than every crime that presents a serious potential risk of physical injury to another," id. at 141, the Court ruled that a DUI is not categorically an ACCA violent felony, id. at 147.

Three years after Begay, in 2011 in Sykes, the Court explained that "[i]n general, levels of risk divide crimes that qualify from those that do not," and Begay's "purposeful, violent, and aggressive" inquiry "has no precise textual link to the residual clause." 131 S. Ct. at 2275. The Court also clarified that "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same." Id.

b.

In this appeal, the relevant residual clause inquiry, applying the categorical approach, is whether an ABHAN offense presents the same "serious potential risk of physical injury" as

28

the ACCA's enumerated offenses — "burglary, arson, or extortion, [or offenses that] involve[] use of explosives." Begay, 553 U.S. at 144.[12] The Supreme Court has explained that the enumerated offenses limit the residual clause "to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Id. at 142.

An ABHAN offense can, as the South Carolina courts have shown, involve a variety of aggravating circumstances. Given the spectrum of such circumstances — from "purposeful infliction of shame" to the use of a deadly weapon — it is clear that there are varying degrees of "potential risk of physical injury" presented, depending on the circumstances of the particular offense. We are, however, tasked with assessing the predicate offense "'generically, that is to say, we examine it in terms of how the law defines [it] and not in terms of how an individual

---

[12] Although the government concedes that ABHAN is not an ACCA enumerated crime, it suggests that we should, in deciding whether ABHAN is an ACCA violent felony, look to the Guidelines, which contains a more extensive list of enumerated offenses. See, e.g., USSG § 2L1.2 cmt. n.1(b)(iii); id. § 4B1.2 cmt. n.1. Even if we were to import additional enumerated offenses into the ACCA, however, the "closest analog" to ABHAN would be "aggravated assault," and the government has conceded that ABHAN is not categorically a generic aggravated assault. See Br. of Appellee 14.

29

offender might have committed it on a particular occasion.'"
Jenkins, 631 F.3d at 684 (quoting Begay, 553 U.S. at 141).[13]

Because the first element of an ABHAN offense — a violent injury — can be satisfied even though "no actual bodily harm was done," State v. DeBerry, 157 S.E.2d 637, 640 (S.C. 1967), this element does not suggest that an ABHAN offense presents the same "serious potential risk of physical injury" as one of the ACCA's enumerated offenses. The second ABHAN element, the presence of circumstances of aggravation, can be satisfied simply by showing, for example, a disparity in age, and such a showing

_____

[13] In Jenkins, we examined whether the Maryland common law crime of resisting arrest qualified as a "crime of violence" for purposes of Guidelines section 4B1.1. Our decisions on whether a previous conviction constitutes a "crime of violence" under the Guidelines are relied upon interchangeably with precedents evaluating whether a previous conviction constitutes a "violent felony" under the ACCA, "because the two terms have been defined in a manner that is substantively identical." United States v. Gomez, 690 F.3d 194, 197 (4th Cir. 2012) (internal quotation marks omitted) (emphasis added); see United States v. King, 673 F.3d 274, 279 (4th Cir. 2012).

Our reliance on Guidelines decisions is necessarily limited, however, to those situations involving "substantively identical" residual clauses. Although decisions interpreting enumerated offenses or force clauses may provide useful guidance, particularly with respect to the question of whether and how to apply the categorical or modified categorical approach, these decisions are unlikely to be pertinent to the ultimate issue of whether an offense constitutes an ACCA violent felony under the residual clause. See, e.g., United States v. Rede-Mendez, 680 F.3d 552, 555 n.2 (6th Cir. 2012) (observing that "[c]ases analyzing the residual clauses" are "not pertinent" to analysis of offenses under force clause of Guidelines section 4B1.2).

fails to present a degree of risk similar to that posed by the ACCA's enumerated offenses. Taken together, these elements demonstrate that an ABHAN offense, in the generic sense, does not pose the degree of risk required to come within the residual clause. Accordingly, we are satisfied that ABHAN is not categorically an ACCA violent felony.[14]

c.

Finally, the Amicus argues that, applying the Supreme Court's decisions in Begay and Sykes, we should rule that ABHAN is categorically an ACCA violent felony because "an ABHAN conviction may be sustained based on reckless conduct," and thus "meets the purposeful, violent, and aggressive test under Begay." Br. of Amicus 14. Although Hemingway agrees that ABHAN's requisite mental state of recklessness is a relevant factor, he maintains that proof of recklessness does not satisfy the purposeful, violent, and aggressive test established in Begay.

---

[14] Because ABHAN is not categorically an ACCA violent felony, we need not separately analyze Hemingway's conviction for AHAN, which is "a lesser included offense of ABHAN, without the completed act of violence," State v. Murphy, 471 S.E.2d 739, 741 (S.C. Ct. App. 1996). Our determination that ABHAN is not categorically an ACCA violent felony leads inescapably to the conclusion that AHAN is also not categorically an ACCA violent felony.

We need not address the question of whether ABHAN satisfies this inquiry under Begay, however, because the focus on ABHAN's requisite mental state, like that taken by the defendant in Sykes, simply "overreads the opinions of [the Supreme] Court." Sykes, 131 S. Ct. at 2275. The appropriate "analysis should focus on the level of risk associated with the previous offense of conviction, notwithstanding the 'purposeful, violent, and aggressive' conduct stressed by the Begay Court in the context of a strict liability offense." United States v. Vann, 660 F.3d 771, 780 (4th Cir. 2011) (King, J., concurring in the judgment). In short, Sykes makes it clear that Begay did not substitute the "purposeful, violent, and aggressive" inquiry for the analysis of risk that is already identified in the residual clause. Because an ABHAN offense does not pose an equivalent "serious potential risk of physical injury" as the enumerated offenses, we need not undertake a redundant inquiry into the requisite mental state for an ABHAN offense.[15]

---

[15] As the parties emphasize in their various submissions, the question of whether ABHAN is categorically an ACCA violent felony has received some inconsistent answers in our Court. In several of our unpublished post-Begay decisions, our Court considered ABHAN to be a categorically "violent felony" for purposes of the ACCA, as well as a "crime of violence" for purposes of the Guidelines. See, e.g., Wiley, 449 F. App'x at 270; Moultrie, 445 F. App'x at 631; United States v. Brunson, 292 F. App'x 259, 262 (4th Cir. Sept. 11, 2008). These decisions, of course, are not binding and were rendered prior to both Sykes and Descamps.

C.

In sum, we rule today that ABHAN is not categorically an ACCA violent felony and that the modified categorical approach has no role to play in the decision of whether a common law ABHAN offense is an ACCA violent felony. As a result, we are compelled to vacate Hemingway's sentence and remand for resentencing.

IV.

Pursuant to the foregoing, we vacate Hemingway's sentence and remand for resentencing and for such other and further proceedings as may be appropriate.

VACATED AND REMANDED

33